Keim *v.* Burkholder et al., Appellants.

Argued November 14, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Robert G. Rose,* with him *Francis A. Dunn,* and *Fike & Cascio,* for appellants.

*Leland W. Walker,* with him *Walker & Kimmel,* for appellee.

OPINION BY WRIGHT, J., December 28, 1956:

In this workmen's compensation case the referee made an award which was affirmed by the Board and the court below. This appeal followed.

Appellant employers are the operators of a drift mine in which both Robert Keim and Roy Yoder worked as coal miners. In addition to his duties in the mine, Yoder was also employed to care for the horse and mules which were used at the mine for pulling coal cars. For performing this service he received extra compensation in the amount of $3.00 a head per month. The livestock was kept in a stable belonging to one of the appellants, which stable was located next door to Yoder's dwelling and some two miles from the mine. It was Yoder's duty to water and feed the animals in the morning and evening. On December 29, 1954, because of an injury to Yoder's hand, appellants made arrangements with Keim to take care of the animals during the period of Yoder's disability. It was understood that, to facilitate bookkeeping, appellants would continue to give Yoder the extra pay he normally received for looking after the livestock and that Yoder would pass it on to Keim. The latter's dwelling was located approximately one thousand feet from the stable. Keim cared for the livestock on December 30, and 31, 1954. On January 1, 1955, at about 7:00 a.m., Keim left his home and started to walk along the public highway toward the stable. A passing automobile suddenly swerved across the road, striking and injuring Keim so severely that he died some twenty hours later.

The referee's ninth finding of fact was: "... that the special services for which decedent was engaged by the defendant required his presence on the State highway where he met with fatal injuries; that he was

occupying himself at that time consistently with his contract of employment in a manner reasonably incident to his employment; that he was, therefore, engaged at work in the course of his employment with the defendant at the time of the accident". His second conclusion of law was: "That since the decedent met with accidental injuries while at work in the course of his employment with the defendants that resulted in his death, his dependent widow is entitled to recover compensation . . ."

In its opinion the Board stated: "It is palpably clear that the claimant [claimant's decedent] was not walking on the highway early New Year's day on a personal mission or for pleasure, but was going to defendants' barn to tend defendants' livestock, in the interests of the defendants". The Board further stated: ". . . the decedent had embarked upon a special errand of service for his employers' livestock, as it was necessary to feed and water them, and a duty ordinarily not included in his work as a miner. It was upon this mission of service, in the interests of the defendants, when tragedy overtook the decedent. We have no hesitancy in holding that under these special circumstances, as a matter of law, the claimant is entitled to compensation, even though the decedent had not yet entered upon the property controlled by the defendant. We agree with the referee that the decedent was engaged in the furtherance of his employers' interests".

Appellants contend "that decedent's death occurred outside the course of his employment, so as to eliminate liability on behalf of the defendants". It is true that, since the accident occurred off the employer's premises, it must appear that the injured employe was actually engaged in the furtherance of the business of the employer at the time, *Lints v. Delaware Ribbon Manufac-*

*turers,* 173 Pa. Superior Ct. 540, 98 A. 2d 643, and that this question is one of law: *Hohman v. Soffel Co.,* 354 Pa. 31, 46 A. 2d 475. See also *Weiss v. Friedman's Hotel,* 176 Pa. Superior Ct. 98, 106 A. 2d 867. However, so far as the factual situation is concerned, we are bound by the findings of the Board if they are supported by the evidence: *White v. Morris,* 182 Pa. Superior Ct. 454, 127 A. 2d 748, and the evidence must be viewed in the light most favorable to the claimant for whom the compensation authorities have found: *Lemmon v. Pa. Department of Highways,* 164 Pa. Superior Ct. 254, 63 A. 2d 684. We must also bear in mind that the Workmen's Compensation Act is a remedial statute and is to receive a liberal construction: *Pater v. Superior Steel Co.,* 263 Pa. 244, 106 A. 202.

It is the position of appellants that the case at bar "is governed by the general rule that an employe who is injured on his way to work, and before reaching the premises of the employer, cannot recover". But this general rule is subject to exceptions. For instance, the contract of employment may include transportation to and from work: *Campagna v. Ziskind,* 287 Pa. 403, 135 A. 124. Or the employe may not have a fixed place of work so that his home in effect constitutes his headquarters: *Hohman v. Soffel Co.,* 157 Pa. Superior Ct. 274, 43 A. 2d 361, affirmed 354 Pa. 31, 46 A. 2d 475. Or the employe may be on a special mission for the employer: *Haddock v. Edgewater Steel Co.,* 263 Pa. 120, 106 A. 196; *Slipp v. Fidelity & Casualty Co.,* 91 Pa. Superior Ct. 526. It is our view that the case at bar presents a peculiar factual situation which constitutes an exception to the general rule. This decedent was temporarily performing extra duties at a location other than his regular place of employment for additional compensation by virtue of a special arrangement.

We have concluded that, under the particular circumstances, he was engaged in the furtherance of the business of his employers while on his way to and from the stable.

The factual situation in the case of *Cymbor v. Binder Coal Co.*, 285 Pa. 440, 132 A. 363, is somewhat analogous. In the *Cymbor* case the decedent worked regularly as a mine electrician. In addition to his customary duties, he was employed to start the mine pumps each night, receiving additional compensation for this extra work. Decedent usually followed a railroad track in traveling the twelve hundred feet from his home to the mine and back. The accident occurred when he was struck by a locomotive while returning from starting the pumps. Mr. Justice WALLING first discussed the general principle that an injury sustained by an ordinary employe, while going to or from work, and not on the employer's premises, is not compensable. Turning to the case on appeal, Mr. Justice WALLING said:

"In the instant case, the nightly trip to the mine was in furtherance of the master's business, to do an errand for the master and he was properly on the latter's time, not merely at the moment of starting the pumps, but going and coming as well . . . In either case the real labor is in going to and from, and while doing so the employe is engaged in the master's business the same as if sent on an errand from the mine to a neighboring village . . . The case is not analogous to that of a day laborer whose work and pay begin when he arrives in the morning and ends when he quits in the afternoon. His furtherance of the master's business begins and ends with the work of a day. In the instant case, to hold the employe was furthering the master's business only after reaching the mine or while starting

the pumps, is drawing too fine a sight on a statute which must be liberally construed".

Similarly, the duties performed by decedent in the instant case constituted extra or special work not included in his regular compensation. Cf. *Bossard v. Nallin & Jennings Park Co.*, 93 Pa. Superior Ct. 301. The trips to the stable during the period of Yoder's disability were just as much in furtherance of appellants' business as though the employers had each day sent decedent on the errand of watering and feeding the stock. The mere fact that he was not actually performing work at the instant he was struck and injured is not controlling, so long as he was occupying himself consistently with his contract of employment and in a manner reasonably incidental thereto: *Kramer v. Philadelphia*, 179 Pa. Superior Ct. 129, 116 A. 2d 280.

The cases principally relied upon by appellants, while announcing the general rule applying to accidents occurring off the employer's premises, are readily distinguishable in their factual situations. In *Boal v. State Workmen's Insurance Fund*, 127 Pa. Superior Ct. 237, 193 A. 341, the claimant was injured while returning to his regular place of work after going home for lunch. In *Short v. Hughes Coal Co.*, 96 Pa. Superior Ct. 237, and in *Giallonardo v. St. Joseph's College*, 177 Pa. Superior Ct. 87, 111 A. 2d 178, claimant slipped on ice while en route to his regular place of work, and before reaching the employer's premises. In *Palko v. Taylor-McCoy Coal & Coke Co.*, 289 Pa. 401, 137 A. 625, the decedent was injured on his way home after finishing his regular work shift. It was held that his intention to return for overtime work after getting something to eat did not render the accident compensable. In *Stahl v. Watson Coal Co.*, 268 Pa. 452, 112 A. 14, the compensation authorities found that the dece-

dent had quit work and was on his way home when he was struck and killed.

In the case at bar, the mine was decedent's regular place of work. His duties at the stable were, as already noted, extra and special services at a different place and time. They were performed for additional compensation under a special arrangement for the convenience of decedent's employers while the employe who regularly performed said services was temporarily disabled. We agree with the court below that decedent entered into the course of his employment when he commenced his trip to the stable, and that the award of compensation to his dependent widow was entirely proper.

Judgment affirmed.